NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHARLOTTE J. PHIFER and FRANK C. PHIFER, JR., h/w, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civ. No. 05-4578 (JHR)(AMD) |
| GEORGE W. KAUFFMAN and STEVEN H. ROACH, | : : : : | OPINION |
| Defendants. | : : | |

**Appearances:**

    James J. Binns, Esquire
    Joseph J. Cappelli & Associates
    Eight Tower Bridge, Suite 1090
    161 Washington Street
    Conshohocken, PA 19428
        Attorney for Charlotte J. Phifer and Frank C. Phifer, Jr.

    Paul C. Johnson, Esquire
    Marshall, Dennehey, Warner, Coleman & Goggin
    200 Lake Drive East, Suite 300
    Cherry Hill, NJ 08002
        Attorney for George W. Kauffman and Steven H. Roach

**RODRIGUEZ, Senior District Judge**:

    This matter comes before the Court on Defendants' Motion for Summary Judgment [15]. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 (2006). The Court, having considered the parties' submissions and decided the motion without oral argument pursuant to FED. R. CIV. P. 78, and for the reasons set forth in this Opinion, will grant Defendants' motion.

## I. FACTS

Plaintiff[1] commenced this action against Defendants to recover damages allegedly arising from an automobile accident in Wildwood, New Jersey, in 2003. Plaintiff claims right arm, right shoulder, neck and right knee injuries as a result of the accident. (See Pl. Opp., pp. 4-5.) The police crash report states that Plaintiff received treatment at the accident site for complaints of neck pain. (See Def. Mot. Summ. J., Exh. A.) However, Plaintiff concedes she did not seek further medical treatment or consult with her physician in the months that followed.[2] Rather, she chose to apply heat and ice to the affected areas. (Pl. Opp., p. 4.)

The parties agree that Plaintiff underwent an annual physical examination with Dr. Robert O. Detweiler on November 17, 2003. (See Def. Mot. Summ. J., p. 2; Pl. Opp., p. 5.) Dr. Detweiler examined Plaintiff's arm and neck. The examination of her neck "revealed right sided sub-occipital neck tenderness to palpation"; Detweiler's examination of her forearm "revealed tenderness to palpation of the ulnar aspect at the cubital region." (Pl. Opp., Exh. 5; see also Def. Mot. Summ. J., Exh. B.) However, Plaintiff admits that Dr. Detweiler did not record any complaints of knee or shoulder pain. (Pl. Opp., p. 5). According to Plaintiff, this omission does not signify a lack of discomfort or pain at that time. (Pl. Opp., p. 5.) She points to three exhibits for support.

---

[1] Both Charlotte J. Phifer and Frank C. Phifer, Jr., commenced this action. Because Ms. Phifer suffered the injuries relevant to this motion, however, "Plaintiff" refers to Ms. Phifer alone.

[2] Plaintiff contends she did not seek professional care because of her continued treatment for malignant mesothelioma. (Pl. Opp., p. 4.)

2

First, Plaintiff attaches Dr. Ernest M. Baran's June 7, 2005 electrodiagnostic impressions. (See Pl. Opp., Exh. 1.) As part of Plaintiff's "History," Dr. Baran noted that Plaintiff "was involved in a motor vehicle accident on 6/15/03. Charlotte indicates she injured her cervical/right shoulder and arm, and also her right knee struck the dash." (Pl. Opp., Exh. 1, p. 1.) Plaintiff also attaches the cover letter from Dr. Ray A. Moyer[3] to Nationwide Mutual Insurance Company. (See Pl. Opp., Exh. 2.) The cover letter states that Plaintiff, on April 25, 2005, "reported that she had symptoms in relation to the right shoulder and both knees ever since the car accident." (Pl. Opp., Exh. 2.)

Finally, Plaintiff refers to Dr. Detweiler's office notes from a February 1, 2005 examination. (See Def. Mot. Summ. J., Exh. E.) Dr. Detweiler noted that Plaintiff experienced right shoulder and right knee pain, and ordered x-rays on those parts. (Def. Mot. Summ. J., Exh. E.) Under the "Chief Complaint" portion, Dr. Detweiler noted "right knee pain off & on 3 months." This notation appears next to an "x." A similar "x" appears below and to the left of this notation, and below the notation "right arm pain." This "x" corresponds to the words "ongoing few years."

Plaintiff visited Dr. Detweiler on June 8, 2004 as well. She concedes that Dr. Detweiler recorded no complaints related to her right shoulder or right knee pain, (Pl. Opp., p. 5; Def. Mot. Summ. J., Exh. C), but insists she was not asymptomatic at that

---

[3] Dr. Moyer works at the Temple University Center for Sports Medicine, Department of Orthopaedic Surgery.

time. She also concedes that she underwent no treatment or diagnostic testing for her shoulder and knee injuries between the date of the accident and November 2004. (Pl. Opp., p. 6.)

Plaintiff slipped and fell at the Philadelphia International Airport in November 2004. (Pl. Opp., p. 5.) Following the fall, she visited Dr. Detweiler with complaints of knee and shoulder pain on February 1, 2005. Because of the timing of her visit, Defendants claim that Plaintiff experienced these pains *only after* the slip and fall. To counter this claim, Plaintiff points to the same exhibits as before. (See Pl. Opp., Exhs. 1, 2; Def. Mot. Summ. J., Exh. E.) Plaintiff reiterates that "her symptoms all stem from the auto accident in question." (Pl. Opp., p. 6.)

On February 15, 2005, Plaintiff underwent MRIs of her right shoulder and right knee at the Central Montgomery Medical Center. (See Pl. Opp., Exh. 4.) The MRIs revealed a full thickness tear of the rotator cuff and a vertical tear of the right medial meniscus. (Pl. Opp., Exh. 4.)

Plaintiff met with Dr. Moyer for the first time on March 14, 2005. Dr. Moyer noted that:

> The patient had a fall in November at the airport and injured both knees as well as her right shoulder. She had been involved in a motor vehicle accident about 2 years ago. Went to the emergency room. Did not have any continued discomfort about the shoulder following that injury.

(Def. Mot. Summ. J., Exh. D.) Plaintiff reiterates that her symptoms appeared the day of the motor vehicle accident, over a year before the airport slip and fall. (See Pl. Opp., p. 6; Exhs. 1, 2.)

4

As stated before, Dr. Ernest M. Baran examined Plaintiff on June 7, 2005, and noted her involvement in an automobile accident. Dr. Baran also noted: (1) "An MRI study was performed, and according to the patient, there was a meniscus tear of the right knee" and (2) "An MRI scan and x-rays of the right shoulder were completed, and according to the patient, a rotator cuff tear was identified." (Pl. Opp., Exh. 1, pp. 1-2.) Using electrodiagnostic studies, Dr. Baran diagnosed "a mild subacute right C5, C6 radiculopathy."[4]

Less than two weeks later, Dr. Moyer re-examined Plaintiff. Dr. Moyer summarized Plaintiff's treatment to that point and noted that Plaintiff's "right knee is really what is most persistently painful." (Def. Mot. Summ. J., Exh. F, p. 1.) With respect to her knee pain, Dr. Moyer diagnosed a "synovitis secondary to a degenerative meniscus, torn meniscus, early chondromalacia." (Def. Mot. Summ. J., Exh. F, p. 2.)

Most recently, Plaintiff procured the written medical opinion of her treating physician, Dr. Detweiler. (See Pl. Opp., Exh. 5.) Dr. Detweiler's May 9, 2006 letter stated that Plaintiff developed right shoulder and right neck pain after the motor vehicle accident; "[o]ver time she developed constant pain in her right shoulder, right knee, and right neck." (Pl. Opp., Exh. 5, p. 1.) Dr. Detweiler noted the neck, shoulder, and knee diagnoses and concluded,

---

[4] "Radiculopathy is a disease of the spinal nerve roots." Casinelli v. Manglapus, 181 N.J. 354, 356 n.3 (2004) (citing STEDMAN'S MEDICAL DICTIONARY, UNABRIDGED LAWYERS' EDITION 810 (5th ed. 1984)).

> [t]o a reasonable degree of medical certainty the diagnoses listed above are
> the direct result of involvement in the motor vehicle accident of June 15,
> 2003. . . . The injuries she sustained as a result of involvement in this motor
> vehicle accident have resulted in significant pain and limitation of activity
> in this vibrant woman. To this date she continues to experience ongoing
> daily pain, restriction of activity and limitation to motion.

(Pl. Opp., Exh. 5, p. 2.)

Plaintiff currently experiences pain "in the right side of her neck and shoulder which radiates into her arm." (Def. Mot. Summ. J., Exh. G, p. 1.) Her right arm suffers from limited range of motion, and her right knee becomes painful with extended use. (Def. Mot. Summ. J., Exh. G, p. 1.)

## II. DISCUSSION

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Therefore, this Court relies on federal precedent to determine the propriety of summary judgment, but looks to New Jersey state law to determine if Defendants are entitled to judgment as a matter of law.

### A. Summary Judgment Standard

This Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the facts might affect the outcome of the suit. Id. This Court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. FED R. CIV. P. 56(e); Celotex, 477 U.S. at 323; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. In fact,

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

It is not this Court's role to evaluate the evidence and decide the truth of the

matter, but rather to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations remain the province of the fact finder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B. New Jersey Automobile Insurance Law**

The Automobile Insurance Cost Reduction Act ("AICRA") was designed to counter rising insurance costs for New Jersey consumers and insurers alike.  See Serrano v. Serrano, 183 N.J. 508, 516 (2005); DiProspero v. Penn, 183 N.J. 477, 488 (2005).  Part of this comprehensive legislation "provides for a revised lawsuit threshold for suits for pain and suffering which will eliminate suits for injuries which are not serious or permanent."  N.J.S.A. 39:6A-1.1(b).  To satisfy this "verbal threshold," and thus recover non-economic damages, the plaintiff's injuries must result in (1) "death;" (2) "dismemberment;" (3) "significant disfigurement or significant scarring;" (4) "displaced fractures;" (5) "loss of a fetus;" or (6) "a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement."  N.J.S.A. 39:6A-8(a).

Plaintiff argues that her injuries fall within the sixth category.  "An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment."  Id. AICRA does not permit the use of subjective testimony to prove a "permanent" injury.  Rather, to demonstrate a genuine issue of material fact, the plaintiff must provide credible objective medical evidence.  Oswin v. Shaw, 129 N.J. 290, 314 (1992); see also Serrano,

8

183 N.J. at 514 ("The new threshold has incorporated Oswin's requirement that the injury be proven by objective credible evidence."); Lucky v. Holland, 380 N.J. Super. 566, 570 (App. Div. 2004). Specifically, AICRA requires the plaintiff to

> provide the defendant with a certification from the licensed treating physician or a board-certified licensed physician to whom the plaintiff was referred by the treating physician. The certification shall state, under penalty of perjury, that the plaintiff has sustained an injury described above. The certification shall be based on and refer to objective clinical evidence, which may include medical testing . . . . Such testing may not be experimental in nature or dependent entirely upon subjective patient response.

N.J.S.A. 39:6A-8(a). This physician certification provision operates "to supply evidence that a plaintiff has, in fact, sustained an injury that qualifies for recovery of non-economic damages under the new verbal threshold." Casinelli v. Manglapus, 181 N.J. 354, 362 (2004).

Furthermore, AICRA requires the injured party to show that "as a result of bodily injury, *arising out of the* . . . operation . . . or use of" an automobile, he or she has "sustained a bodily injury which results in" permanent injury. N.J.S.A. 39:6A-8(a) (emphasis added). "Any permanent injury suffered by plaintiff must be causally connected to the automobile injury." Hardison v. King, 381 N.J. Super. 129, 136 (App. Div. 2005).

New Jersey courts recognize the validity of MRI scans as a form of objective clinical evidence. See, e.g., Pardo v. Dominguez, 382 N.J. Super. 489, 490, 494 (App. Div. 2006) (concluding that the existence of a herniated disc, identified through the use of

9

an MRI, sufficed to satisfy the verbal threshold).[5] However, none of the reported decisions support the characterization of diagnostic test results as "credible objective medical evidence" of an injury when the plaintiff undergoes the testing nineteen months after an accident – let alone months after an additional, intervening accident. See, e.g., Davidson v. Slater, 381 N.J. Super. 22, 23-26, 27 (App. Div. 2005) (relying on numerous reports and diagnostic tests – *subsequent to a 2001 accident but prior to a 2003 accident* – to find credible objective medical evidence that plaintiff's injuries were result of 2001 accident); see also DiProspero, 183 N.J. at 482 (noting that plaintiff visited family physician six days after an accident, and received MRIs and chiropractic consultation four months later); Hardison, 381 N.J. Super. at 131-32 (describing plaintiff's consistent course of treatment, and the use of MRIs, electromyogram tests, and nerve conduction studies); Lucky, 380 N.J. Super. at 569-70 (describing plaintiff's treatment regimen and citing "various diagnostic tests" in the months and years after an accident, with no subsequent accidents reported); Villanueva v. Lesack, 366 N.J. Super. 564, 566 (App. Div. 2004) (noting that plaintiff, injured in October accident, received a radiological report displaying her injury "[a]s early as December," and a CT scan less than three months later).

---

[5] Contrary to Defendants' assertion, Thompson v. Potenza, 364 N.J. Super. 462, 471 (App. Div. 2003), does not hold that "an objective [MRI] study consistent with radiculopathy is insufficient to vault the threshold." (Def. Mot. Summ. J., p. 9.) There, the Appellate Division said nothing about the sufficiency of MRI evidence to cross the threshold. Rather, it noted that the plaintiff's MRI "revealed no significant injuries"; therefore, "the record lack[ed] objective medical evidence of compensable injury." Thompson, 364 N.J. Super. at 471.

**C. Plaintiff's Right Knee and Right Shoulder Injuries**

The parties do not dispute the results of Plaintiff's medical tests. MRI scans revealed a meniscus tear of the right knee and a torn right rotator cuff. Similarly, Dr. Baran diagnosed a mild subacute right C5, C6 radiculopathy. Rather, Defendants contend that Plaintiff's decision to seek treatment for her right knee and right shoulder only after her slip and fall demonstrates the absence of a causal link between her injuries and the earlier automobile accident. Defendants rely on the fact that "Plaintiff did not have any diagnostic testing for any of the claimed injuries until February 2005." (Def. Mot. Summ. J., p. 9.) Of course, February 2005 was three months after the fall, and more than eighteen months after the automobile accident.

*i. Defendants' Evidence in Support of Motion for Summary Judgment*

To demonstrate the absence of a genuine issue of material fact, Defendants argue that Plaintiff failed to communicate any complaints to Dr. Detweiler for five months after the June 2003 automobile accident. In fact, Defendants urge, "[h]er medical treatment records between June 2003 and February 2005 contain no reference at all to knee or shoulder problems." (Def. Mot. Summ. J., pp. 1-2.) Defendants add that Plaintiff did not consult with any specialists during that same period. (Def. Mot. Summ. J., p. 7.)

Defendants attach several exhibits to show that no reasonable factfinder could conclude that the automobile accident caused Plaintiff's alleged injuries. Defendants emphasize that the initial police crash report mentioned Plaintiff's complaints of neck

11

pain, but no knee or shoulder pain.  (Def. Mot. Summ. J., Exh. A.)  More importantly, Defendants rely on Dr. Detweiler's progress notes to demonstrate the absence of any complaints of shoulder or knee pain.  On November 17, 2003, Dr. Detweiler noted right-sided sub-occipital tenderness (neck) and right forearm tenderness, but nothing regarding the knee or shoulder.  (Def. Mot. Summ. J., Exh. B.)  Likewise, Dr. Detweiler investigated Plaintiff's complaint of a growth on her forehead during a June 8, 2004 examination, but noted no complaints of shoulder or knee pain.  (Def. Mot. Summ. J., Exh. C.)

To demonstrate further that the fall at the airport caused Plaintiff's injuries, Defendants emphasize the language in Dr. Moyer's 2005 reports.  For example, Dr. Moyer stated that Plaintiff "had a fall in November at the airport and injured both knees as well as her right shoulder" and "has had trouble with both her knees, more on the right than the left, following this fall in the airport in November."  (Def. Mot. Summ. J., Exh. D.)  At a later examination, Moyer noted that Plaintiff's "shoulder and neck actually are feeling better, not as perfect."  (Def. Mot. Summ. J., Exh. F.)

Finally, Defendants rely on Dr. Detweiler's 2/1/05 office notes.  In contrast to Dr. Detweiler's earlier records, Defendants point to the explicit recognition of Plaintiff's right knee and right shoulder pain.  Most importantly, Dr. Detweiler notes Plaintiff's complaint of right knee pain "off & on 3 months."  Defendants contend that this notation, along with the preceding evidence, demonstrates that no reasonable jury could link Plaintiff's

injuries to the 2003 automobile accident. The Court agrees. New Jersey law requires an injured party to demonstrate both injury and causation with credible objective medical evidence. The proffered evidence sets forth the complete lack of a causal link between the 2003 accident and the alleged injuries. Defendants have met their burden to provide evidence showing that there is no genuine issue with respect to Plaintiff's right knee and right shoulder injuries.

*ii. Plaintiff's Opposition Evidence*

Plaintiff relies on four exhibits in opposition to the motion. (See Pl. Opp., Exhs. 1, 2, 5; Def. Mot. Summ. J., Exh. E.) Even at this point, however, the Court must disregard Exhibits 1 and 2. Dr. Ernest Baran's electrodiagnostic impression provides no objective medical evidence that the automobile accident caused Plaintiff's injuries. Dr. Baran mentions the accident once, and only then because of Plaintiff's subjective complaints and allegations: "[Plaintiff] indicates she injured her cervical/right shoulder and arm, and also her right knee struck the dash." (Pl. Opp., Exh. 1.) To withstand summary judgment, Plaintiff cannot introduce subjective complaints in the guise of "objective medical evidence" of causation. See, e.g., Jacques v. Kinsey, 347 N.J. Super. 112, 118 (Law Div. 2001).

The same reasoning applies to Dr. Moyer's cover letter to Nationwide Mutual Insurance Company. Dr. Moyer stated that, during an April 2005 meeting, "*the patient reported* that she had symptoms in relation to the right shoulder and both knees ever since

13

the car accident." (Pl. Opp., Exh. 2.) Because it simply repeats Plaintiff's subjective claims, Exhibit 2 fails to provide credible objective medical evidence of causation.

Similarly, Exhibit 5 fails to create a genuine issue. Dr. Detweiler's letter summarizes Plaintiff's treatment and prognosis. The bulk of Dr. Detweiler's report discusses Plaintiff's treatment after the November 2004 slip and fall. In fact, the report refers to no pre-2005 diagnostic tests or consultations. (See Pl. Opp., Exh. 5, pp. 2-3.) With respect to the period before November 2004, the letter recounts Plaintiff's description of the automobile accident and the pains caused by the accident. Dr. Detweiler writes, "Charlotte developed right shoulder pain and right neck pain after the incident. . . . Over time she developed constant pain in her right shoulder, right knee, and right neck." (Pl. Opp., Exh. 5, p. 1.) Because Dr. Detweiler's notes are not derived from credible objective medical evidence, but rather Plaintiff's subjective complaints of pain, Exhibit 5 fails to demonstrate a genuine issue for trial.

Like Defendants, Plaintiff relies on Dr. Detweiler's 2/1/05 office notes. Specifically, she points to Dr. Detweiler's notations under the "Chief Complaint" section. Although Defendants point to the notation "r knee pain off & on 3 months" to support their claim that Plaintiff's injuries stem from the later slip and fall, Plaintiff focuses on the language to the left, underneath a separate notation for "r arm pain." This language reads, "on going few years." (Def. Mot. Summ. J., Exh. E.) Because a small "x" appears next to both "3 months" and "on going few years," the office notes appear confusing and

ambiguous.[6]  Nevertheless, the Court concludes that the notations fail to create a genuine issue of material fact.  Even when read in the light most favorable to Plaintiff, the complaints of ongoing right knee pain for a few years do not find support in credible objective medical evidence.  The ambiguous notes appear under the "Chief Complaint" section and convey Plaintiff's subjective complaints of arm and knee pain.  Therefore, the notes fail to demonstrate causation and injury.

To summarize, there is no credible objective medical evidence upon which a reasonable jury could return a verdict in favor of Plaintiff with respect to Plaintiff's right knee and right shoulder injuries.  Plaintiff fails to provide sufficient evidence to contradict Defendants' properly supported motion.  Because AICRA requires Plaintiff to demonstrate by "objective credible medical evidence" that the automobile accident caused her injuries, and Plaintiff fails to satisfy this requirement, she cannot cross the verbal threshold and recover non-economic damages.  This Court must grant Defendants' motion for summary judgment.

**D. Plaintiff's Right Neck and Right Arm Injuries**

Defendants further urge this Court to dismiss Plaintiff's claims for non-economic damages with respect to her neck and right arm injuries.  Rather than argue that these injuries were not causally connected to the 2003 automobile accident, Defendants argue that "Plaintiff has offered no clinical, objective evidence of serious permanent injury to

---

[6] The Court notes that Plaintiff herself interprets this notation to allege that "her arm pain is ongoing for a few years." (Pl. Opp., pp. 5, 6.)

correlate with her subjective complaints." (Def. Mot. Summ. J., p. 9.) As described above, Dr. Detweiler noted "right sided sub-occipital neck tenderness to palpation" and "tenderness to palpation of the ulnar aspect at the cubital region [forearm]" during his November 2003 examination. (Pl. Opp., Exh. 5; see also Def. Mot. Summ. J., Exh. B.) These observations correspond to Plaintiff's complaints of right forearm and right neck "discomfort." (Def. Mot. Summ. J., Exh. B.) Although Dr. Detweiler later noted the diagnosis of acute cervical sprain and strain (see Pl. Opp., Exh. 5, p. 3), there is no indication of evidence supporting this diagnosis in his earlier notes.

Furthermore, Plaintiff failed to receive diagnostic testing, and failed to consult with a specialist, until February 2005. (See Def. Mot. Summ. J., p. 2; Pl. Opp., p. 6.) Only after that time did Plaintiff receive objective electrodiagnostic testing revealing a mild C5, C6 radiculopathy. To the contrary, Dr. Detweiler's notes and the other medical records rely explicitly on Plaintiff's subjective complaints of pain in her neck and right forearm. (See, e.g., Pl. Opp., Exhs. 1, 5.)

While AICRA does not require an injured party to demonstrate "serious" permanent injury, Serrano, 183 N.J. at 510, it nonetheless requires the plaintiff to set forth objective, credible medical evidence of a permanent injury arising from an automobile accident. The Court concludes that Plaintiff fails to make this showing. Even when read in the light most favorable to Plaintiff, the record only presents evidence of Plaintiff's subjective complaints of particular pains and complaints of tenderness. The subjective

16

complaints of neck and right arm pain, even when supported by Dr. Detweiler's finding of "tenderness to palpation," are insufficient to vault the verbal threshold and permit recovery of non-economic damages.  See Montemayor v. Signorelli, 339 N.J. Super. 482, (App. Div. 2001) (agreeing with the motion judge's decision to grant summary judgment when plaintiff sought irregular treatment for an eventual diagnosis of stiff neck, acute cervical sprain or strain, and disc desiccation).  The Court must grant Defendants' motion for summary judgment on the remainder of Plaintiff's alleged injuries.

### III. CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment will be granted.  An appropriate Order will issue this date.


Dated: May 22, 2007                               /S/ Joseph H. Rodriguez
                                                  JOSEPH H. RODRIGUEZ, U.S.D.J.